(112 So. 235)

**HALL v. HUBBARD et al.   (8 Div. 862.)**

Supreme Court of Alabama.   April 7, 1927.

**1. Reformation of instruments ⬯1—Equity proceeds cautiously in granting reformation, where alleged error is denied.**

Where alleged error or mistake is denied, court proceeds cautiously in granting reformation.

**2. Evidence ⬯390(1)—Deed is primary evidence of transaction, not subject to be varied or questioned collaterally.**

Deed duly executed by grantor and accepted by grantee is primary evidence of real transaction between parties, not to be varied or questioned in collateral proceedings.

**3. Reformation of instruments ⬯45(1)—Evidence must be sufficiently convincing to satisfy court that written instrument does not speak parties' intention to warrant reformation.**

In direct proceeding to reform instrument, evidence of mutual mistake must be sufficiently clear and convincing to reasonably satisfy court that deed does not bespeak true intention of parties; especially where evidence of mistake rests wholly in parol.

**4. Reformation of instruments ⬯13(3)—Where only one of two lots constituting residence property was conveyed, remote grantee held entitled to reformation as against grantor, who turned over entire property making no claim to undesignated lot which she admitted she thought she had sold.**

Where two lots constituting one residence property were turned over under deed which merely described single lot, and grantor ceased to pay taxes on lot not designated or to claim it until condition of deed was disclosed, remote grantee to whom interest had been conveyed *held* entitled to reformation; grantor having conceded she thought all property had been sold.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Bill in equity by J. O. Hall against Mrs. L. B. Hubbard and husband, Mrs. Ethel Wilson and husband, and C. C. Morgan, for reformation of a deed and to remove from the law side an action in ejectment by Morgan against complainant, with cross-bill by Morgan. From a decree denying relief by reformation and retransferring the ejectment suit to the law side, complainant appeals. Af-

firmed in part, and in part reversed and rendered.

Thos. E. Orr, of Albertville, for appellant.

Appellant has the right to maintain this suit to reform the deed. Code 1923, § 6961, Turner v. Kelly, 70 Ala. 99; Campbell v. Hatchett, 55 Ala. 552; Holland-Blow v. Barclay, 193 Ala. 200, 69 So. 118; Lipham v. Shamblee, 205 Ala. 498, 88 So. 569.

Street, Bradford & Street, of Guntersville, for appellees.

To authorize a reformation, the bill must show with particularity a mutual mistake, and the proof must be clear beyond reasonable controversy. Hinton v. Citizens' Co., 63 Ala. 488; Lipham v. Shamblee, 205 Ala. 498, 88 So. 569; Hammer v. Lange, 174 Ala. 337, 56 So. 573; Fowler v. Stacey, 207 Ala. 151, 92 So. 120; Code 1923, § 6961; Page v. Whatley, 162 Ala. 473, 50 So. 116. The mistake must certainly appear. Hand v. Cox, 164 Ala. 348, 51 So. 519; Greil v. Tillis, 170 Ala. 391, 54 So. 524.

BOULDIN, J. This is a bill in equity for the reformation of a deed to lands in matter of description.

[1, 2] Courts of equity proceed with great caution in granting this form of relief where the alleged error or mistake is denied. A written instrument recognized and required by law as the memorial of a transaction in real estate, when duly executed on the part of the grantor and accepted by the grantee, becomes strong, primary evidence of the real transaction, not to be varied or questioned in collateral proceedings.

[3] In a direct proceeding to reform the instrument, the evidence of mutual mistake must be so clear and convincing that, having due regard to all the presumptions in favor of the instrument, the court is nevertheless reasonably satisfied the deed does not bespeak the true intention of the parties; that both parties understood the transaction alike, and the deed is at variance with this mutual intention.

Special reason for caution arises where the evidence of mistake rests wholly in parol. But the remedy of reformation is well recognized in equity, and rests upon a strong basis of justice. Human experience is that mistakes do occur. That one party should suffer and the other reap a reward as the result of a mutual mistake should be disfavored. Without such remedy a party thus finding himself in a position of vantage would be the more tempted to wrong the other.

[4] Briefly stated, complainant claims to have purchased a residence property in the town of Albertville; that in the deed of conveyance it was described as one lot No. 28, according to a recorded plat, when in fact it included lot No. 27 also, and seeks to reform his conveyance accordingly.

In 1901 T. R. Roberts purchased and received a deed to lot 28, a V-shaped lot, except a small parcel at the point of the V. This lot was virtually a right triangle, one leg forming the boundary between lots 28 and 27. A residence was built, or more probably begun, at the time of his purchase, was completed and thereafter occupied by himself and family as a residence. The residence faced a public street, the hypotenuse of the triangle. One corner of the building projected over on lot 27, and in the following year T. R. Roberts purchased and received a deed to lot 27. Thereafter it became one residence property, the barn and garden and part of the residence being located on 27. At the same time the inclosures were extended to include part of lot 26. The property was thus occupied by T. R. Roberts until his death in 1909. Thereafter his widow and two minor daughters resided there for a time. Mrs. Roberts married Mr. L. B. Hubbard, and thereafter resided in Birmingham. The Albertville property was occupied by a tenant holding possession of it as a unit until February, 1918, when W. M. Gray made a purchase from Mrs. Hubbard and daughters, and received a deed prepared by the grantors describing it as lot 28 in the named survey. Mrs. Hubbard's tenant turned over the possession of the entire property to Gray, who occupied it as theretofore. Gray later conveyed the property by the same description, and on by successive conveyances to this complainant, J. O. Hall, each successive purchaser taking possession of the whole and holding it without question from any one as to the subject of his purchase until 1922, when this complainant, discovering that the deeds to lot 28 only covered a portion of the property, applied to Mrs. Hubbard for a quitclaim deed to lot 27 to correct an alleged misdescription in this chain of deeds. Thus far the evidence is without dispute, or so nearly so as not to admit of serious question.

The purchase of the property by Gray was through correspondence. Neither party produces any part of it. This is not strange after the lapse of several years, the parties not appearing to be business people accustomed to preserve files of correspondence. Gray's positive testimony with that of other witnesses, contemporaneous acts, and the essential unity of the property for residence purposes, all make it very clear that Gray and those claiming under him regarded his purchase as including the entire property. Up to 1917, Mrs. Hubbard consistently assessed and paid taxes on the property. From 1918 to 1921 inclusive she did not assess lot 27 as property still owned. So far as tax records go, she claimed no property after making the deed to Gray until the disclosure of the condition of the deed in 1922. Disinterested witnesses, whose testimony we see no reason to disbelieve, depose that when

approached to make a correction deed she conceded that she thought she had sold all the property, and stood ready to correct the deed until the separate deed to lot 27 was discovered, when, probably on outside advice, she declined. No tenant or caretaker of the remaining property, after segregation of lots 28 and 27, anywhere appears, nor indeed any asserted claim at any time from 1918 to 1922. No reason is suggested why there was any thought of a division of the property for purposes of use or sale. True, probably, as stated generally by Mrs. Hubbard, she did not at the time have specially in mind lot 27 as a distinct part of the property. If so, the mistake would probably not have occurred. The whole evidence leads to a firm conviction that she did have in mind the entire property in its unity, and the error probably arose by using only one deed at the time she caused the Gray deed to be prepared.

We can see no reason to question that the daughters, looking to their mother's management of the matter, had the like intent to convey their interest in the entire property. Mrs. Hubbard says they were fully informed. Mrs. Wilson, the only daughter now living, and a party to the suit, does not testify.

The decree as to Mrs. L. B. Hubbard and Mrs. Ethel Wilson is reversed, and one here rendered divesting out of them all title and interest in lot 27, as further described in the bill, and vesting same in complainant, J. O. Hall. The register will execute a deed accordingly. The decree as to respondent C. C. Morgan, and on his cross-bill, affecting lot 26, is affirmed.

The costs of suit on the original bill in the court below and the costs of appeal are decreed one-half against the appellant, J. O. Hall, and one-half against appellee Mrs. L. B. Hubbard. The decree decreeing costs in the removal proceedings from the law side to the equity side of the court, and vice versa, remains undisturbed.

Affirmed in part, and in part reversed and rendered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.