261 So.2d 393

J. Victor DAVIS et al.

v.

Dr. Carl R. ROBINSON et al.

6 Div. 886.

Supreme Court of Alabama.

April 6, 1972.

Rehearing Denied May 11, 1972.

**382**

---

Huey, Stone & Patton, Bessemer, for appellants.

F. Eugene Wirwahn, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a decree which denied the relief sought by appellants' cross bill, in which appellants prayed that they be declared the owners of Lot 15 in Block 1, Skyview Estates in Bessemer, the plat of which was properly recorded.

The Robinsons, appellees, owned Lot 16, in Block 1, and they built their home on it. They also had an equity in Lot 15 under a contract for purchase from Bessemer Coal, Iron and Land Company. On April 7, 1958, the Robinsons gave appellee J. V. Davis a deed to Lot 15, Block 1, and the consideration paid was stated as $4,400.00. On may 21, 1958, Bessemer Coal, Iron and Land Company deeded to appellee J. Victor Davis Lot 15, Block 1, for $3,244.13, the balance owed by the Robinsons, and the deed also showed that the Robinsons had deeded the lot to Davis on April 7, 1958.

Block 1, Skyview Estates, lies roughly north and south. Lots 11–16 face Somerset Boulevard on the west and are bounded by an alley on the east. Lot 16 (the Robinsons' lot) is the southernmost lot in Block 1 and Lot 15 is immediately north of Lot 16. Lot 15 is a rectangular lot and has 155 foot frontage on Somerset Boulevard and 86 foot frontage on the alley at the rear of the lot.

It is undisputed that when Dr. Robinson was showing Davis the boundary line be-

tween Lots 15 and 16, that Dr. Robinson went, not to the common corner between the lots on the east side but to the northeast corner of Lot 15 (he should have been at the southeast corner of 15) and sighted by a stake or pole at the corner of a tennis court that Robinson had built behind his house and, oddly enough, this line continued straight to the southwest corner of Lot 15. Thus, Dr. Robinson had shown Davis a diagonal line running from the northeast corner to the southwest corner of Lot 15 as the boundary line between Lots 15 and 16 when the true line according to the plat was 86 feet south of where Dr. Robinson said the corner was on the east or alley side of the lots.

When Davis started to build his house on Lot 15, it was discovered that the south end of his house was too close to Lot 16 if the line that was pointed out by Dr. Robinson was the correct line. For the first time, as between Robinson and Davis, Lot 15 was surveyed and it was found that there was more than the required space between the south end of the house and the north line of Lot 16, and it further appeared that one end of the tennis court and a 13 x 17 brick playhouse, both built by the Robinsons, were located on Lot 15. The Davis house was completed and Dr. Robinson sought to get Davis to sign an agreement whereby Davis would trade a triangular piece of ground on the south side of Lot 15 toward the rear for a triangular piece of land on the north side of Lot 16 toward the front owned by the Robinsons. The tract Davis would get fronted 18 feet on Somerset Boulevard and the tract the Robinsons would get was about 56 feet wide at its widest point and included the end of the tennis court and the brick playhouse.

Efforts to effect this trade were not successful and on August 22, 1960, the Robinsons filed a bill of complaint for reformation of the deed based on mutual mistake of the parties. After a demurrer was filed pointing out the absence of facts to support the reformation, and before a ruling on the demurrer, the bill was amended and new paragraphs were substituted for paragraphs 2, 3, 4 and 5 of the original bill and an addition was made to the prayer of the bill.

The amended bill was in two aspects, first, reformation based on mutual mistake and, second, specific performance based on alleged oral promises to make the trade for the two triangular pieces of land previously noted and designated as Tract A (the one in Lot 15 that contained the end of the tennis court and the brick playhouse) and Tract B (the one in Lot 16 which fronted 18 feet on Somerset Boulevard). The amended bill alleged that the Robinsons owned Lots 15 and 16 in Block 1 prior to the sale of Lot 15 to Davis; that the parties "did mutually ascertain to their own satisfaction that the Southeast corner of Lot 15 was located where in fact the Northeast corner of Lot 15 is located." It was further alleged that after the survey was made "it was discovered for the first time that the Northeast corner of Lot 15 was actually 86 feet South of the point mutually agreed on in the negotiations for the sale of the lot." A demurrer was refiled to the amended bill on September 21, 1962. The chief justice of this court, upon being informed that both judges of the Bessemer Division had recused themselves, appointed a judge from outside the circuit to hear the cause. The appointed judge transferred the cause to the Birmingham Division on March 21, 1967. The cause was dismissed by the circuit court for want of prosecution on March 3, 1969, but was reinstated on motion of complainants on March 21, 1969. A cross bill and answer were filed on January 21, 1971.

The cross bill denied that the Robinsons were the owners of Lot 15, alleging that they "merely had an equity in the lot" and attached as exhibits the deeds from the Robinsons and the Bessemer Coal, Iron and Land Company to Davis and the recorded contract between the company and Robinson for the purchase of Lot 15. The Davises also denied that "there was

any mutual mistake or mutual misunderstanding as to said lines and the said respondent J. Victor Davis did not attempt to make any determination as to the lines of said Lot 15, but as heretofore stated, relied upon the representations and statements of the respondent Robinson." They alleged that at no time was it agreed or understood that Davis should acquire less than the whole of Lot 15 and that no agreement had ever been made as to a transfer or sale of Tracts A and B. They further alleged that Lot 16 had unsatisfied first and second mortgages on it and that they (the Davises) had given a first mortgage for $20,000.00 on June 12, 1958 on Lot 15 and this mortgage was paid in full on August 12, 1963. They asserted that any alleged agreement to transfer lands was oral and, therefore, void because it violated Tit. 20, § 3(5), Code 1940. The prayer of the cross bill was that the Davises, appellants here, be adjudged the owners of Lot 15, that the Robinsons be ordered to move the encroachments from Lot 15 and that the Robinsons be required to pay damages for their unlawful use and detention of the part of Lot 15 on which part of the tennis court and the playhouse were located.

The trial began on March 4, 1971 and the decree was rendered the next day. The final paragraph of the court's opinion and the decree follow:

"The Court finds, simply, that neither the parties Complainant nor the parties Respondent nor neither of them have made out a proper case, in law or in equity, against their respective adversaries.

"Accordingly, it is CONSIDERED, ORDERED, ADJUDGED AND DECREED as follows:

"ONE: That the Bill of Complaint in this cause is dismissed, with prejudice.

"TWO: That the Cross-Bill or Cross-Claim of Respondents is dismissed, with prejudice.

"THREE: The costs of this action are taxed to Complainants, for which let execution issue."

Part "One" is not before us on this appeal. It is favorable to appellants and appellees have not taken a cross-appeal and made no cross-assignments of errors.

Appellants do charge error as to part "Two" of the decree. We are unable to follow the reasoning which permits the Robinsons to use the end of the tennis court and the playhouse which is on Lot 15 and which they sold Davis, or at least all the interest they had in it.

▇ If a lot is sold by lot and block according to a recorded map, the lines and figures on the map or plat become part of the description by reference as if the courses and distances shown thereby were set out in the deed. Ford v. Ward, 272 Ala. 235, 130 So.2d 380; Smith v. Harbaugh, 216 Ala. 202, 112 So. 914. Here, the deed conveyed Lot 15 in Block 1 to Davis and that is what he claims.

▇ We come now to consider the question of mutuality of mistake. There was no mistake about the southwest and northwest corners of Lot 15 on Somerset Boulevard. Both parties knew where they were and that they were 155 feet apart. Dr. Robinson was pointing out the boundary line between Lot 16 and Lot 15. The map called for a width of 86 feet for Lot 15 fronting the alley. But Dr. Robinson pointed out the northeast corner of Lot 15 as being the northeast corner of Lot 16, thereby adding the entire 86 feet on the alley to his lot and leaving Lot 15 with no frontage on the alley. He then pointed out that his line was a straight line from that point to the southwest corner of Lot 15, thereby cutting the lot nearly into halves. Had the Robinsons owned Lots 14 and 13, Dr. Robinson's line could have been accepted as a line arrived at by mutual mistake, but there is no evidence that he had any interest in any lot north of Lot 15 out of

which the 86 feet frontage on the alley for Lot 15 could be carved.

On his direct examination, Dr. Robinson testified that he had a discussion with Mr. Davis after the survey was made and asked Mr. Davis to deed him back the corner of the tennis court and the playhouse. He said Davis told him, "You made the mistake, I didn't." "Well, of course, I walked off right then because I wasn't too happy. The next day, I went back to Vic and told him, I did make a mistake, a very big one."

The result of the mistake was that the Robinsons, after agreeing to deed all of Lot 15, not only were claiming nearly one-half of the lot but were reducing the lot from a rectangular shape to a triangle with only a mathematical point for frontage on the alley because they owned no property north of the point they showed as their northeast corner.

Davis relied strictly on Dr. Robinson for the boundary line between Lot 15 and Lot 16. But he wanted and intended to buy Lot 15. The Robinsons deeded all their interest in Lot 15 to him. This is not a mistake in description. It is not a mistake of a draftsman or scrivener, but it was a unilateral mistake of the purported owner of both lots who was pointing out the line between the lots. Dr. Robinson's mistake clearly prejudiced the Davises.

We think the evidence supports the allegations of appellants' cross bill, and it appears from the evidence that there was no intention of the parties to split Lot 15 by a diagonal line and their conduct since the deeds were delivered supports this conviction.

There is no evidence in the record that even intimates that the Robinsons claim the diagonal line as a line established by a mutual mistake. No such intimation appears in appellees' brief on appeal. The case of Clipper v. Gordon, 253 Ala. 428, 44 So.2d 576, quotes the following from Hall v. Hubbard, 215 Ala. 653, 112 So. 235, with approval:

"Courts of equity proceed with great caution in granting this form of relief where the alleged error or mistake is denied. A written instrument recognized and required by law as the memorial of a transaction in real estate, when duly executed on the part of the grantor and accepted by the grantee, becomes strong, primary evidence of the real transaction, not to be varied or questioned in collateral proceedings.

"In a direct proceeding to reform the instrument, the evidence of mutual mistake must be so clear and convincing that, having due regard to all the presumptions in favor of the instrument, the court is nevertheless reasonably satisfied the deed does not bespeak the true intention of the parties; that both parties understood the transaction alike, and the deed is at variance with this mutual intention.

"Special reason for caution arises where the evidence of mistake rests wholly in parol. But the remedy of reformation is well recognized in equity, and rests upon a strong basis of justice. Human experience is that mistakes do occur. That one party should suffer and the other reap a reward as the result of a mutual mistake should be disfavored. Without such remedy a party thus finding himself in a position of vantage would be the more tempted to wrong the other."

Here, the evidence of mutual mistake was not clear and convincing, and to say what happened here to be the result of a mutual mistake would cause the Davises to "suffer" and the Robinsons to "reap a reward."

We come now to a point to which most of the evidence for appellees was directed —the request for specific performance of the alleged oral agreement of Davis that he would trade Tract A for Tract B.

■ Equity will not specifically enforce an agreement within the Statute of Frauds.

**386**

Quinlivan v. Quinlivan, 269 Ala. 642, 114 So.2d 838; Downs v. Downs, 257 Ala. 643, 60 So.2d 686. Tit. 20, § 3(5), Code 1940 provides:

"In the following cases, every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:

\* \* \* \* \* \*

"(5) Every contract for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."

 Here, appellees were claiming on an admitted oral agreement between Dr. Robinson and Victor Davis relative to an exchange of portions of their respective lots. Assuming without deciding that Davis had made such an agreement, it violated the Statute of Frauds because it was not reduced to writing, and further, there was no writing signed by Mrs. Davis.

The last part of Section 205, Constitution of 1901 provides that the "alienation of said homestead by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same."

An attempted sale of the whole or part of a homestead is void unless in writing, signed and acknowledged by the wife. Clark v. Bird, 158 Ala. 278, 48 So. 359; Phillips v. Smith, 214 Ala. 382, 107 So. 841.

Davis had a deed and the right of possession to Lot 15. His predecessor in title continued to use part of it. In effect, the trial court held that he had good title but by some reasoning he could not possess all he had title to because of encroachments put on the lot by his grantor.

We are not to be understood as holding that a grantor is entitled to remove every encroachment on the land he has sold to a grantee, see Bolling v. Whittle, 37 Ala. 35. Here, Davis asked for an order of removal in the prayer of the cross bill and, therefore, the encroachments should be ordered removed and Davis was entitled to such an order under the cross bill and the undisputed evidence.

The trial court is directed to order the appellees to remove all the encroachments on Lot 15, and failing that, to assess such damages as will pay for the cost of removal.

Reversed and remanded with directions.

HEFLIN, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.