**Willie J. BREEDEN, Plaintiff,**

**v.**

**RICHMOND COMMUNITY COLLEGE, Joseph W. Grimsley, Individually and as President and Chief Administrative Officer of Richmond Community College, David A. Adeimy, Individually, Vice President for Instruction, James Chavis, Jr., Individually, Vice President for Continuing Education, Defendants.**

**No. 3:96CV00054.**

United States District Court, M.D. North Carolina, Rockingham Division.

Feb. 14, 1997.

## ORDER

RUSSELL A. ELIASON, United States Magistrate Judge.

Defendants request dismissal of plaintiff's amendments to his complaint. A brief factual background will be helpful. Plaintiff, Willie Breeden, was employed as an instructor at Richmond Community College (hereinafter "College") through a series of one-year contracts from 1976 to 1995. In June 1995, the College decided not to reappoint plaintiff for the 1995–96 academic year.[1] The College contends that the decision not to reappoint plaintiff was made because the grant which funded his position was not renewed. Plaintiff believes he was not reappointed due to racial discrimination.

The original complaint named defendants Richmond Community College, Joseph Grimsley, David Adeimy, and James Chavis, Jr., and alleged racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the North Carolina Constitution; wrongful discharge in violation of N.C.Gen.Stat. § 143–422.2; tortious and malicious interference with economic relations; and civil conspiracy. (Pleading No. 1) The individual defendants were listed in both their individual and official capacities. The College and the individual defendants moved to dismiss the majority of plaintiff's claims. Plaintiff opposed the motion and also made a motion to amend his complaint.

The Court granted defendants' first motion to dismiss in substantial part, and also granted plaintiff's motion to amend. (Pleading No. 16) On the same day, plaintiff filed the amended complaint now under scrutiny, which alleged two new claims: fraudulent misrepresentation and negligent misrepresentation. (Pleading No. 17). The College and the individual defendants have filed the present motion to dismiss these two claims.[2]

Willie J. Breeden, Laurel Hill, NC, Pro Se.

Richard A. Schwartz, Stratton C. Strand, Brian C. Shaw, Richard Schwartz & Associates, Raleigh, NC, for Defendants.

---

1. Plaintiff held a position as a Human Resources Development ("HRD") instructor, which was funded in substantial part by a Job Training Partnership Act ("JTPA") grant.

2. In their reply brief, defendants also move to strike plaintiff's "Response" to their second motion to dismiss (Pleading No. 22) for failure to comply with Local Rules. Plaintiff's response does violate Local Rule 202(f), which requires

that a response to a motion be accompanied by a brief. Plaintiff has only submitted a stack of documents, the purpose of which is not entirely clear to the Court. An examination of these documents fails to inform the Court about plaintiff's legal position, aside from the fact that he opposes defendants' motion. Nevertheless, the Court declines to strike plaintiff's "response" and consider defendants' motion as being uncontest-

## A. Fraudulent Concealment/Omission

 Defendants seek dismissal of plaintiff's fraudulent misrepresentation claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. The Court agrees that the claim is deficient under Rule 9(b), but not under Rule 12(b)(6). The source of the apparent deficiency under Rule 12(b)(6) and the actual deficiency under Rule 9(b) lies in the fact that although plaintiff has termed his claim as one of "fraudulent misrepresentation," it is clear in this case that he really is alleging "fraudulent concealment" or fraud by omission.[3] (*See* Am.Compl. ¶¶ 14–15, 51). In some circumstances, such concealment or nondisclosure may be considered akin to a positive misrepresentation and serve as a basis for actionable fraud. *Rosenthal v. Perkins*, 42 N.C.App. 449, 452, 257 S.E.2d 63, 66 (1979) (citing *Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 126 S.E.2d 135 (1962)).

 In order to state an actionable claim of fraud under North Carolina law, plaintiff must allege the following essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. *Liner v. DiCresce*, 905 F.Supp. 280, 288 (M.D.N.C.1994) (citing *Myers & Chapman,*

*Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988)). And, because this is a case of fraudulent concealment or nondisclosure, plaintiff must additionally allege that all or some of the defendants had a duty to disclose material information to him as silence is fraudulent only when there is a duty to speak. *Griffin v. Wheeler–Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976). *Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol*, 893 F.Supp. 526, 542 (E.D.N.C.1994); *see also Brickell v. Collins*, 44 N.C.App. 707, 710, 262 S.E.2d 387, 389, *review denied*, 300 N.C. 194, 269 S.E.2d 622 (1980).

In North Carolina, the general rule is that:

> [s]ilence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other ... party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. . . . [T]he silence must, under the conditions existing, amount to fraud, because it amounts to an affirmation that a state of things exists which does not, and the uninformed party is deprived to the same extent that he would have been by positive assertion.

*Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962) (citing 23 Am.Jur. *Fraud and Deceit* § 77).[4]

---

ed. The filing of some sort of "response" by plaintiff clearly indicates that he contests defendants' position; he has just failed to support it with legal argument.

3. Plaintiff alleges that defendants neither told him about the availability of, nor gave him the opportunity to apply for, at least six positions for which he claims he was qualified. (Am.Compl. ¶ 14 (emphasis added)). He also alleges that defendants *failed to advise him* that the HRD/JTPA position was temporary and contingent upon funding. (Am.Compl. ¶ 15 (emphasis added)).

4. In contrast to fraudulent misrepresentation cases where the standard of duty is fixed, in fraudulent omission cases the obligation imposed on parties is not always so easy to ascertain because the scope of the duty to disclose can vary between different situations and jurisdictions. For example, in *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980),

the Supreme Court reaffirmed its recognition that the common law duty to disclose whenever there was a fiduciary or like relationship of trust and confidence between parties extended to the relationship between corporate insiders and the shareholders of the corporation. *Id.* at 228, 100 S.Ct. at 1114–15. The Supreme Court expressly noted that it had never held that a duty to disclose arose merely because one party had superior information vis-a-vis another party and, accordingly, declined to extend the duty to disclose to cover all participants in market transactions trading on material, nonpublic information. *Id.* at 228, 233, 100 S.Ct. at 1114–15, 1117. On the other hand, the court in *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir.1995), indicated that a duty to disclose in the absence of a fiduciary relationship could arise if a party makes partial ambiguous statements which require other disclosures to prevent confusion, or if the party acquires superior knowledge not readily available to the other and known that the other is acting on the basis of

■ While the Court agrees that plaintiff has not pled a misrepresentation claim, it is clear that he merely mislabeled his claim and intends to proceed on the basis of fraudulent omission or concealment. In paragraphs 50 through 54 of his amended complaint, plaintiff alleges the basic elements of an actionable fraudulent concealment or fraudulent omission.[5] For this reason, the Court will deny defendants' Rule 12(b)(6) motion to dismiss the claim labeled fraudulent misrepresentation. However, even in a case of fraudulent concealment or omission, a plaintiff must comply with the heightened pleading requirements of Fed.R.Civ.P. 9(b). For the reasons set forth below, the Court finds that plaintiff has failed to comply with this obligation.

■ Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." In construing Rule 9(b), courts generally require that a plaintiff plead the "time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." *Liner v. DiCresce*, 905 F.Supp. at 287 (quoting *Riley v. Murdock*, 828 F.Supp. 1215, 1225 (E.D.N.C.1993)); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990). This construction works well for cases of affirmative misrepresentations because such are discrete, observable events which can be particularized. An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons.

In contrast to affirmative misrepresentations, fraudulent concealment, or fraud by omission, as alleged in paragraphs 14, 15, and 49–54 of plaintiff's amended complaint, "is by its very nature, difficult to plead with particularity." *Daher v. G.D. Searle & Co.*, 695 F.Supp. 436, 440 (D.Minn.1988). Fraud by omission consists of non-action. The duty of a specific person to speak is determined through consideration of a number of factors to find when, where, how and what duty was created. Nevertheless, these factors should be known by the time the complaint is filed, and must be stated with particularity to fairly apprise the defendant of the charges.

■ In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance. *See, e.g., Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (E.D.La. 1993); *Frank M. McDermott, Ltd. v. Moretz*,

the misinformation. In that same vein, the court in *American Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1486 (D.Minn.1991), *aff'd and remanded*, 967 F.2d 1208 (8th Cir.1992), *cert. denied*, 506 U.S. 956, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992), held that under Minnesota law, a special circumstance requiring disclosure arises when the failure to disclose would render misleading statements which have already been made. Notwithstanding, all these cases do start from the general rule that normal arms-length bargaining does not entail any special duty to disclose.

The duty of disclosure may arise not only under common law but under statutory law. *Williams v. East Coast Sales, Inc.*, 59 N.C.App. 700, 298 S.E.2d 80 (1982) (duties of mobile home sellers). In addition, under some state unfair trade practice laws, when the duty to disclose is imposed by statute, unlike common law, the plaintiff need not prove detrimental reliance. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114 (N.D.Ill.1995).

5. Plaintiff states the defendants knew about the availability of other positions and knew that the position in controversy which he accepted was temporary and contingent upon funding. He claims that the defendants were aware that these facts were material to him; that defendants withheld the information with the intent that plaintiff rely on the concealment; that he did so rely when he accepted the position; and that he suffered damages when the position ended.

898 F.2d 418, 421 (4th Cir.1990) (citation omitted); *see also Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir.1987) (stating that a plaintiff must plead with particularity reasonable, detrimental reliance upon a misrepresentation). Plaintiff's amended complaint fails to satisfy this test.

### 1. *Duty to Speak*

Under the North Carolina law which governs this case, in order for silence or an omission by the defendants to be actionable fraud, it must relate to a material matter known by the defendants which they had a legal duty to communicate to plaintiff, "whether that duty arose from a relation of trust, from confidence, inequality of condition or knowledge, or other attendant circumstances." *Setzer*, 257 N.C. at 399, 126 S.E.2d at 137. Generally such legal duty to disclose will arise where a fiduciary relationship exists between the parties. Outside of a fiduciary relationship, a duty to disclose may also arise in situations where parties are dealing at arm's length and one party has taken affirmative steps to conceal material facts from the other, or where one party has knowledge of a latent defect in the subject matter of the dealings about which the other party is both ignorant and unable to discover through reasonable diligence. *Harton v. Harton*, 81 N.C.App. 295, 297–298, 344 S.E.2d 117, 119, *review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986) (citations omitted). Finally, even if a party otherwise has no duty to disclose a particular matter, should that party speak about it, then a full and fair disclosure may be required. *Shaver v. N.C. Monroe Construction Co.*, 63 N.C.App. 605, 614, 306 S.E.2d 519, 525 (1983), *review denied*, 310 N.C. 154, 311 S.E.2d 294 (1984) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974)).

When considering a motion to dismiss, the Court must distinguish between well-pled facts and conclusory allegations. Although paragraph 50 of plaintiff's amended complaint alleges that "[d]efendants ... had a duty to present material employment information to plaintiff honestly and accurately," plaintiff fails to allege the source of such duty owed by any defendant to plaintiff, and fails to allege any factual basis supporting the imposition of such a duty. Plaintiff has not alleged facts supporting the existence of a fiduciary relationship.[6] Nor has plaintiff detailed a factual basis for concluding that defendants concealed the availability of other positions for which he was qualified, or that they concealed the fact that the HRD/JTPA position was temporary and contingent upon funding. That is, plaintiff fails to state facts from which it could be inferred that defendants concealed information which plaintiff could not obtain upon exercising due diligence, or that defendants knowingly contributed to plaintiff's misapprehension. Nor has plaintiff alleged facts from which it would be reasonable to infer that defendants knowingly misled plaintiff by speaking without full disclosure. Accordingly, plaintiff fails to satisfy the pleading requirements of Rule 9(b) with respect to alleging a duty to speak.

### 2. *Time Period or Events Triggering the Duty to Speak*

In paragraph 14 of his amended complaint, plaintiff generally states that "Mr. Breeden was denied other positions that were not dependent upon federal funding," apparently because "[d]efendants never told plaintiff about the availability of [such] positions and never gave plaintiff the opportunity to apply." However, the allegation is deficient because it is not clear from this general averment when or where the alleged fraudulent omission occurred. The uncertainty of the time and place of these alleged omissions makes it difficult, if not impossible, for defendants to specifically address this allegation in adverse pleadings. At a minimum, plaintiff

---

**6.** Even if plaintiff had alleged a fiduciary relationship, that would not have helped his cause. In a somewhat similar situation, the Fourth Circuit held that the failure of a medical school to inform a faculty member that its tenure policy differed from that of the American Association of University Professors did not violate a duty of the school to its teachers because the relationship does not impose such a fiduciary duty. *Sabet v. Eastern Virginia Medical Authority*, 775 F.2d 1266 (4th Cir.1985). Although decided under Virginia law, there is no reason to think North Carolina law would call for a different result.

must specifically identify when the other positions were available, and when and why the defendants should have disclosed the information to him.

■ In contrast, it is true that plaintiff's allegation in paragraph 15a of his amended complaint that defendants "knew the HRD/JTPA position would be temporary ... but failed to advise plaintiff at that time," is also not explicit as to the time and place of the alleged fraudulent omission. Nevertheless, it is implicitly clear plaintiff is alleging that such omission occurred at the time he accepted the HRD/JTPA position.

### 3. General Content of the Information Withheld

■ Viewed in the light most favorable to plaintiff, paragraph 14 sufficiently alleges the content of the withheld information by stating the defendants failed to tell him about the availability of a number of other positions.[7] However the omission alleged in paragraph 15 of plaintiff's amended complaint is a closer call. There, plaintiff alleges that "upon information and belief" defendants knew the HRD/JTPA position would be temporary and failed to advise him that such position was temporary. (Because the position was always a one-year contract, plaintiff must be alleging that defendants knew the funding would come to an end by his use of the term "temporary.") Although the general content of the omission seems clear, i.e. failure to advise plaintiff that the funding for the position would be temporary and end in 1995, this statement is still too general. Allegations based "upon information and belief" are generally insufficient to meet the requirements of Rule 9(b). An-

drews v. Fitzgerald, 823 F.Supp. 356, 375 (M.D.N.C.1993).

■ Allegations of fraud may be made "upon information and belief" only when the matters are particularly within the defendants' knowledge, and facts are stated upon which the belief is founded. *Id.* Because of the more nebulous nature of fraudulent omissions as compared to misrepresentations, the Court may be more lenient in determining whether allegations based upon information and belief satisfy the pleading requirements of Rule 9(b). Notwithstanding, even in a fraudulent omission case, a plaintiff may not entirely dispense with the statement of facts upon which his belief is founded. Plaintiff must state the *factual basis* for his belief that defendants had knowledge that the funding for the HRD/JTPA position would be temporary and end in 1995 and that they failed to so advise him. Plaintiff's amended complaint in this case lacks any such factual allegations, and therefore fails the particularity requirement of Rule 9(b) with respect to the content of the information withheld.

### 4. Identity of Those Failing to Disclose Material Facts

■ More significantly, plaintiff fails to identify the role of the specific persons involved in the alleged fraudulent concealment. One of "[t]he purpose[s] behind the specificity requirement of Rule 9(b) is to give defendants sufficient notice of the particular misconduct alleged to constitute fraud so they can adequately prepare for defense ... [t]o that end, 'where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.'"[8] *Andrews*, 823 F.Supp. at 373

---

7. Plaintiff claims that he was denied certain positions that were not dependent upon federal funding such as: Literacy Instructor, GED Tester, Occupational Extension Instruction [sic], Assessment/Retention Specialist, Assistant/Retention Specialist, and Literacy Skills Recruiter/Instructor (Am.Compl. ¶ 14).

8. Indeed with respect to affirmative misrepresentations it has been stated that:

The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants

are "lumped together" and in which "no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor ... the date of the utterance."

*McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 931 (N.D.Ill.1985) (quoting *Lincoln Nat'l Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976)).

(quoting *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987)). Each defendant must be informed of when his or her duty to disclose material information to plaintiff arose and of his or her role in the alleged fraudulent omission of such information.

In the present case, plaintiff's amended complaint is completely devoid of allegations as to how any individual defendant participated in the alleged fraud. Plaintiff merely describes the alleged concealment or omissions in terms of what "defendants" or "they" failed to do. It is impossible for either the College or any of the individual defendants to determine from these allegations which of the omissions they are specifically responsible for or what role they are alleged to have played in the fraud.

### 5. *What Defendants Gained by Withholding Information*

Plaintiff's amended complaint also lacks any allegations concerning what any defendant obtained or hoped to gain by withholding information from the plaintiff. Although his amended complaint contains general averments which might be read to indicate that defendants withheld certain information from plaintiff in an attempt to remove him from their employ, the precise nature of any defendant's gain is unclear from the pleadings. It is possible that plaintiff wishes the Court to assume he is charging that defendants benefitted by terminating plaintiff in order to satisfy a desire to commit a racist act. However, that is an extremely serious charge to be leveled at an individual. A court should not be readily inclined to *sua sponte* imply such a motive and risk sullying the reputation of potentially innocent persons. Rather, plaintiff himself must clearly and directly make the allegation as to each defendant. Plaintiff has failed to make such an allegation in this case and, therefore, the complaint is deficient.

9. The failure of plaintiff to allege how he was damaged by the alleged omission would not necessarily call for dismissal of the claim in this case. It might be inferred that plaintiff was damaged when he took a temporary position

### 6. *Reliance and Damages Proximately Flowing Therefrom*

Finally, plaintiff fails to set forth specific factual allegations showing both that it was reasonable for him to rely on the alleged omissions and how he was in fact injured by such omissions. He merely alleges that in taking the HRD/JTPA position, he relied upon omissions of material fact. Such legal conclusions do not satisfy the requirements of Fed.R.Civ.P. 9(b). *See Riley v. Murdock,* 828 F.Supp. 1215, 1225 (E.D.N.C. 1993). A pleading that only avers the technical elements of fraud does not have sufficient informational content to satisfy the requirements of Rule 9(b). Wright & Miller, *supra,* § 1297, at 608, 612.[9] Dismissal of a fraud claim is proper where reasonable reliance has not been pleaded with particularity. *Learning Works, Inc. v. The Learning Annex, Inc.,* 830 F.2d at 546.

In conclusion, plaintiff's amended complaint contains only general, vague allegations of fraud by omission, with most of the allegations being legal conclusions rather than specific statements of fact. Such allegations do not meet the pleading requirements of Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss plaintiff's sixth cause of action for fraudulent concealment/omission is granted. However, considering plaintiff's *pro se* status, the Court will grant plaintiff leave to amend his complaint to conform to the particularity requirements of Rule 9(b). Such amended complaint must be filed within twenty days.

### B. Negligent Misrepresentation

Defendants have moved to dismiss plaintiff's negligent misrepresentation claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Fed.R.Civ.P. 9(b) for failure to satisfy the particularity pleading requirements. Plaintiff's negligent misrepresentation claim is based upon the same factual allegations upon which he predicated his claim of fraudulent misrepresentation.

instead of a permanent one, if plaintiff had also alleged defendants knew at that time that the funding of the temporary position would expire. He then might have the basis for a valid claim for damages. He has not alleged this.

Thus, defendants argue that plaintiff essentially is pleading fraud, and, like the fraudulent misrepresentation claim, this claim also should be dismissed for failing to satisfy the particularity requirements of Rule 9(b). In fact, plaintiff's negligent misrepresentation claim is in reality a claim of negligent omission, and it does suffer from the same defects discussed with respect to plaintiff's fraudulent omission claim.

First, the Court will start with the Rule 9(b) deficiency. The Court has not located any controlling authority in the Fourth Circuit as to whether a claim for negligent misrepresentation or omission must be pled with particularity. Some federal courts do not require that allegations of negligent misrepresentation meet the pleading requirements of Rule 9(b). *See In re LILCO Sec. Litig.,* 625 F.Supp. 1500, 1504 (E.D.N.Y.1986); *Masso v. United Parcel Serv. of Am., Inc.,* 884 F.Supp. 610, 615 (D.Mass.1995); *but see Lindner Dividend Fund, Inc. v. Ernst & Young,* 880 F.Supp. 49, 57 (D.Mass.1995) ("[T]his district has 'clearly held. that Rule 9(b) applies to claims of negligent misrepresentations' "). Other courts hold that "the requirements of [Rule 9(b) ] apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Pitten v. Jacobs,* 903 F.Supp. 937, 951 (D.S.C.1995) (gravamen of negligent misrepresentation claim is fraud) (quoting *Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 283 (D.Del.1993)); *see also In re Leslie Fay Companies, Inc. Sec. Litig.,* 918 F.Supp. 749, 766 (S.D.N.Y.1996) (negligent misrepresentation); *Arndt v. Prudential Bache Sec., Inc.,* 603 F.Supp. 674, 676 (S.D.Cal.1984) (negligent misrepresentation).

▄▄ This Court adopts the second approach that negligent misrepresentation (omission) claims come within Rule 9(b). That interpretation more accurately comports with the basis behind the rule and its original rationale. First, and most obvious, the rule covers fraud *and mistake* and, thus, on its face is not limited to willful misrepresentations.[10] *United States v. $3,216.59 in United States Currency,* 41 F.R.D. 433, 435–36 (D.S.C.1967) (mistake). Rather, the rule was designed to govern claims premised upon a party's misrepresentation, misapprehension, or misunderstanding; in short, arising out of either mutual or unilateral confusion, whether intentionally or carelessly generated.

Courts and commentators have advanced a variety of reasons for the heightened pleading standard in cases of fraud or mistake. These are: (1) protecting defendants' reputation by discouraging conclusory claims charging acts of moral turpitude which impugn defendants' reputation; (2) as a corollary, protecting defendants from baseless suits filed for nuisance or settlement value; (3) providing defendants the details of the wide variety of conduct which can constitute fraud and mistake, in order that they may adequately prepare a response; (4) preventing the filing of fraud actions merely in the hopes of finding some actual fraud through the discovery process; and (5), recognizing that claims of fraud and mistake historically have been disfavored actions because they often involve attempts to reopen settled transactions or set aside previously issued judicial orders. *See* Wright & Miller, *supra,* § 1296, at 577–81; *see also Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 284 (D.Del.1993).

The Seventh Circuit, adopting the position of some commentators, has suggested that most of the aforementioned reasons for the particularity pleading requirements are "makeweights." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992); *see also* William M. Richman, Donald E. Lively, Patricia Mell, *The Pleading of Fraud: Rhymes without Reason,* 60 S.Cal.L.Rev. 959 (1987); Jeff Sovern, *Recon-*

---

10. *See, e.g., Brown v. Chaffee,* 612 F.2d 497 (10th Cir.1979) (Rule 9(b) applies to a cause of action which alleges that the opposing party made misrepresentations that were either intentional or negligent); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir.1987) (Rule 9(b) uniformly applied to claims of securities fraud, common law fraud, and negligent misrepresentation);

*Hershey v. MNC Financial, Inc.,* 774 F.Supp. 367, 375–76 (D.Md.1991) (applying Rule 9(b) to claimed violations of securities laws, noting that "[t]he mere fact that plaintiffs need not prove scienter to recover under § 11 and 12(2) does not mean that § 11 and 12(2) claims can never 'sound in fraud.' ").

*sidering Federal Civil Rule 9(b): Do We Need Particularized Pleading in Fraud Cases?*, 104 F.R.D. 143 (1985). Notwithstanding, the Seventh Circuit did recognize that these rationales have "a germ of sense."

Changing times likely have cast a different light on the policy reasons behind Rule 9(b) so that they now appear as little more than "makeweights" with all but the "germ of sense" hidden. Once the original basis and rationale behind the particularized pleading requirement for fraud and mistake is understood, it becomes easier to accept Rule 9(b)'s continued existence. Therefore, it will be helpful to see if a more general policy reason for Rule 9(b)'s existence can be discovered.

Rule 9(b) can be traced directly back to the common-law pleading rules. At common law, a higher degree of certainty and more specific details were required in the pleadings of actions which, because of their nature, were disfavored, and in particular, those in which the defendant's morality was brought into question. Charles E. Clark, *Handbook of the Law of Code Pleading*, § 48, at 312 (2d ed. 1947).[11] Actions for fraud or deceit were disfavored because " '[t]his is a class of allegations concerning the morality of the defendant's conduct in which he is entitled to know fully the grounds on which the allegations

are made, so that he may have every opportunity to prepare his case to clear himself at the trial.' " Clark, § 48, at 313 & n. 87 (citation omitted). Thus, because the nature of such claim was to implicate defendant's morality and hence, reputation, the common law pleading requirements entitled defendant to the fullest particulars of the claim. Clark, *supra*, § 48, at 312; *In re Rica Gold Washing Co.*, [1879] 11 C.D. 36, 43 (Eng.C.A.); *see also Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972) (echoing the common law rationale: "[i]t is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically.").

With the adoption of the Federal Rules of Civil Procedure in 1938, American pleading practice became more liberalized. Unlike the original pleading codes which required "facts constituting the cause of action," the new rules only required "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R.Civ.P. 8(a)(2). However, Rule 9(b) followed the English practice and the Model Code of the American Judicature Society, and preserved for fraud and mistake the rules of common-law fraud pleading that applied more generally to claims of deceit, dis-

---

11. Disfavored actions included fraud and deceit, libel and slander, and malicious prosecution. Charles E. Clark, *Handbook of the Law of Code Pleading*, § 48, at 311 (2d ed. 1947). While false imprisonment is included with malicious prosecution as a disfavored claim, such a connection seems out of place because of its different nature and history.

The two actions have a different nature. Malicious prosecution requires proof of malice as well as want of probable cause. *Id.* at 314. The requirement of malice makes malicious prosecution more akin to actions for fraud, deceit, libel and slander because it impugns defendant's reputation. The same is not true for the tort of false imprisonment.

The two actions also have different historical antecedents. Malicious prosecution, fraud, deceit, libel and slander were known under common law as actions on the case, whereas false imprisonment was known as a trespass. *Id.*; James A. Pike, *Cases & Other Materials on New Federal and Code Procedure, (Summary of Common–Law Pleading)* § 37 at 842–44 (1939). At common law, civil actions were divided into three subject matters: (1) real, dealing with land,

tenements, etc., (2) personal, meaning recovery of chattels or damages, and (3) mixed. As to personal actions,

The common law divided personal actions according to the nature of the wrong to be redressed, into actions *ex contractu*, which are for the breach of a contract, and actions *ex delicto*, which are for wrongs not connected with contract. The actions in form *ex contractu* are debt, covenant, assumpsit, and detinue; those in form *ex delicto* are trespass, trespass on the case, trover, and replevin.

*Id.* at 837.

Trespass was a direct action because it usually involved force and violence. Instances of such are assault and battery, false imprisonment, trespass, forced debauchery, etc. "Trespass on the case," on the other hand, came about in the thirteenth century because societal evolution produced a need for a remedy for indirect type actions which did not come within the existing original writs required for commencing a civil action. Pike, *supra*, at 843. These new actions came to encompass deceit, libel, slander, malicious prosecution, interference with contracts or business situations, etc.

honesty, and over-reaching. *See* Clark, *supra*, § 48, at 313 (citing to Eng.Rules of Supreme Court, O. 19, rr. 6, 22, at 359, 386 (Annual Practice, 1945); 14 AM. JUDICATURE SOC'Y BULL. art. 15, § 18 (1919): 'In all cases in which the party pleading relies on any misrepresentation, fraud, breach of trust, wilful default, or undue influence, the facts must be stated with full particularity ...').[12] This class of cases under the English practice all appear to involve the common element of a party's delusion or confusion. Fraud and deceit would appear to be the more morally repugnant charges and perhaps this is why fraud was still given special preference when notice pleading was adopted in the United States.[13] This does not explain why mistake was added to Rule 9(b), but that too appears to have a common law origin.

Claims of "mistake" appear to have been disfavored for a different reason than fraud and deceit. An action based on mistake arose from the ancient chancery or equity courts of England, which at first followed ecclesiastical law. Clark, *supra*, at 16. The chancery or equity court could grant the remedy of specific performance, cancellation or reformation of a contract, but a heavier quantum of proof was necessary. Clark, *supra*, at 331–332 n. 127. Cancellation and reformation of contracts are the foundation of modern actions for mistake.

In modern times, the word "mistake" is generally used in the law to refer to an erroneous belief not in accord with the facts.

RESTATEMENT (SECOND) OF CONTRACTS § 151. Traditionally, an agreement may be rescinded or reformed when there is a mutual mistake of material fact—where each party labors under the same misconception, and the mistake is a common one that neither party intended. Although mistake has been recognized as a justification for reforming or rescinding agreements, the law has been careful to preserve written agreements or other instruments recognized as memorials of a transaction. *See Marriott Financial Servs., Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 138, 217 S.E.2d 551, 561–62 (1975) (citation omitted); *Davis v. Robinson,* 288 Ala. 381, 261 So.2d 393, 397 (1972) (citation omitted). Indeed, it has been said:

> "[t]he policy of the law is to administer relief to the vigilant, and to put all parties to the exercise of a proper diligence. In like manner, where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or when the fact is doubtful from its own nature, in any such case ... [w]here each party is equally correct and there is no concealment of facts, mistake or ignorance is no foundation for equitable interference."

*Marriott Financial Servs.,* 288 N.C. at 139, 217 S.E.2d at 562. Thus, equitable relief in the nature of reformation or recision on grounds of mutual mistake is only afforded "when the circumstances justify such relief,"

---

**12.** Indeed, the Advisory Committee Notes to Rule 9(b) cite to the English Rules requiring particularized pleading in fraud cases. *See* Fed.R.Civ.P. 9, note to subdivision (b).

**13.** Because the major purpose behind particularized pleadings was to protect against charges of immorality, this may account in large part for the current dissension among modern commentators as to the necessity of particularized pleading under Rule 9(b). In a more litigious environment, less deference may be given by society to attacks on an individual's reputation. Mores and customs change with time, and the need for Rule 9(b)'s protection may have become less obvious or important to the twentieth century, more secular and more corporate, American society.

Consider this example. In 1850, the phrase "beyond a reasonable doubt was equated with proof to a "moral certainty." *Commonwealth v. Webster,* 59 Mass. 295, 320 (1850); *see also Fidelity Mutual Life Assn. v. Mettler,* 185 U.S. 308, 317, 22 S.Ct. 662, 665, 46 L.Ed. 922 (1902) (stating that "[p]roof to a 'moral certainty' is an equivalent phrase with 'beyond a reasonable doubt.'") The Supreme Court recently recognized that the common meaning and understanding of the phrase "moral certainty" has changed since its original use, so that the reliability of the term in conveying a heightened standard of consideration may be in doubt. *Victor v. Nebraska,* 511 U.S. 1, 12–19, 114 S.Ct. 1239, 1248, 127 L.Ed.2d 583 (1994). Likewise, attacks on an individual's reputation or morality may now seem less serious. Consider the fact that the law actually encourages the filing of some lawsuits. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (civil rights); *U.S. ex rel. Stinson v. Prudential Ins.,* 944 F.2d 1149, 1154 (3d Cir.1991) (*qui tam* suits); *Chrysler Corp. v. General Motors Corp.,* 596 F.Supp. 416, 419 (D.D.C.1984) (anti-trust).

because courts "jealously guard the stability" of settled transactions. *Id.* (referring specifically to real estate transactions).

As noted earlier, chancery or equity courts required a heightened standard of proof to prevail on claims of specific performance, reformation, or recision of a contract. In modern times, to prevail on a claim of mistake, a plaintiff must show mistake by clear, cogent, and convincing evidence. *Hice v. Hi–Mil, Inc.,* 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981); *Isley v. Brown,* 253 N.C. 791, 117 S.E.2d 821 (1961); *Hege v. Sellers,* 241 N.C. 240, 247, 84 S.E.2d 892, 897 (1954); *see also Estate of Hysinger v. Heeney,* 785 S.W.2d 619, 624 (Mo.Ct.App.1990); *Minor v. Fincher,* 206 Ga. 721, 58 S.E.2d 389, 395 (1950); *Collier v. Ogburn–Davison Co.,* 231 Ala. 344, 164 So. 741 (1935). The disfavored nature of the action (because it overturns existing agreements) as evidenced by the heightened burden of proof appears to be the reason for the inclusion of mistake in Rule 9(b).

There is a common thread between fraud and mistake which may explain the modern retention of the particularity requirement as to both fraud and mistake and help in deciding which actions should be included in Rule 9(b). Unlike other intentional or negligent acts, both fraud and mistake are claims which, by their nature, involve mutual or unilateral confusion and/or delusion. Both claims derive from a party's own subjective misperception, misapprehension or misunderstanding and subsequent reliance. Such claims often may not be readily apparent to others and may appear to contradict existing facts or contracts. Unless defendant and others share plaintiff's view of the situation, they will find it difficult to grasp plaintiff's claim. *See Miller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 572 F.Supp. 1180, 1184 (N.D.Ga.1983). Allegations of fraud

and mistake seek to undermine the reality of presumed facts and are by their nature unsettling to the parties and their agreements. In conclusion, from the rule's historical foundations, its text, and the nature of fraud and mistake actions, this Court finds that Rule 9(b) applies to actions wherein the major component involves significant delusion or confusion of a party, whether intentional or not.

To return to the problem of the instant case, a claim for negligent misrepresentation falls within Rule 9(b). Like a claim for fraud or mistake, it is based upon some confusion or delusion of a party such as by some misrepresentation, omission, misapprehension or misunderstanding. Indeed, the only essential distinction between the torts of fraudulent and negligent misrepresentation is the state of mind of the purported actor(s).[14] The misrepresentation in a negligent misrepresentation claim need only arise from a want of "reasonable care or competence in obtaining or communicating information," as opposed to a "knowing" or a "reckless" communication for fraud. *Constitution Bank v. DiMarco,* 155 B.R. 913, 919 (E.D.Pa. 1993). Accordingly, plaintiff's negligent misrepresentation claim will be dismissed for insufficient pleading.

The above dismissal will be with prejudice. Plaintiff has alleged a negligent omission, not a negligent misrepresentation claim. The Court has not been cited to, nor has it located, a case wherein North Carolina has extended the tort of negligent misrepresentation to cover "negligent omissions," much less to an employer-employee relationship. Other states when presented with claims of "negligent omissions" have rejected it. *See, e.g., Mason v. Burkett,* 756 F.Supp. 679, 682 (D.Conn.1991) (no false information; rather, defendant provided no information at all). The Court finds the tort of negligent

---

**14.** The tort of negligent misrepresentation in North Carolina is primarily a fraud-based claim. North Carolina has adopted the definition of negligent misrepresentation outlined in the Restatement (Second) of Torts § 552. As the Restatement (Second) definition suggests, this tort is premised upon the making of a false assertion of a material fact. *See Vernon v. Steven L. Mabe Builders,* 110 N.C.App. 552, 557, 430 S.E.2d 676, 679 (1993), *rev'd in part on other grounds,* 336 N.C. 425, 444 S.E.2d 191 (1994) ("[B]oth false

misrepresentation (i.e. fraud) and negligent misrepresentation share two essential elements: (1) the supplying by the defendant of false information, and (2) reliance on the false statement by the plaintiff.") (citing *Fulton v. Vickery,* 73 N.C.App. 382, 388, 326 S.E.2d 354, 358, *disc. rev. denied,* 313 N.C. 599, 332 S.E.2d 178 (1985); *Forbes v. Par Ten Group, Inc.,* 99 N.C.App. 587, 595, 394 S.E.2d 643, 647 (1990), *disc. rev. denied,* 328 N.C. 89, 402 S.E.2d 824 (1991)).

omission does not presently exist in North Carolina.[15] It would be futile for plaintiff to attempt to replead his claim of negligent omission.[16]

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss plaintiff's sixth cause of action for fraudulent concealment pursuant to Fed.R.Civ.P. 9(b) is **GRANTED,** and plaintiff's fraudulent concealment claim is **DISMISSED WITHOUT PREJUDICE** to plaintiff refiling within twenty days an amended complaint setting forth the allegations of fraud by omission with particularity as required under Fed.R.Civ.P. 9(b).

**IT IS FURTHER ORDERED** that defendants' motion to dismiss plaintiff's seventh cause of action for negligent misrepresentation pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b) is **GRANTED,** and **DISMISSED WITH PREJUDICE.**

---

**15.** It is well-recognized that when deciding a question of state law, federal courts must rule upon state law as it exists, and not surmise or suggest its expansion. *Burris Chemical, Inc. v. USX Corp.,* 10 F.3d 243 (4th Cir.1993). *See also Ball v. Joy Technologies, Inc.,* 958 F.2d 36, 39 (4th Cir.1991), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992) (declining to extend damages for emotional distress to exposure to toxic chemicals where such damages were not recognized by state law); *Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir.1989) (declining to recognize a new cause of action for retaliatory discharge not recognized by state law); *Guy v. Travenol Lab., Inc.,* 812 F.2d 911, 917 (4th Cir.1987) (declining to recognize an anti-retaliation cause of action to protect employees who refuse to violate the pure food laws which was not recognized by state law).

**16.** Because plaintiff's negligent misrepresentation claim is dismissed with prejudice, the Court declines to address defendants' immunity argument.